## In re FLORIDA POWER & LIGHT CO.

Docket No. 9777-EU, Order No. 5122.

Florida Public Service Commission.

May 10, 1971.

Darry A. Davis and Shepard King of McCarthy, Steel, Hector & Davis, Miami for Florida Power & Light Co.

Robert L. Shevin, Attorney General, intervenor.

Alan H. Rothstein, for City of Miami, intervenor.

Chairman JESS YARBOROUGH and Commissioners WILLIAM T. MAYO and WILLIAM H. BEVIS participated in the disposition of this matter.

## BY THE COMMISSION.

Robert L. Shevin, as attorney general of the state of Florida, an intervenor in this matter on behalf of the state and all citizens of the state who may be consumers of the services offered by Florida Power & Light Company, has filed herein his suggestion and motion that this commission direct said electric utility to pay directly, as authorized by the attorney general, a sum of money not to exceed $25,000 to an independent certified public accounting firm or recognized public utility rate consulting firm, such firm to be employed and retained by the attorney general on behalf of the consumers of Florida Power & Light Company, for the purpose of conducting an independent audit and investigation of the rate structure of the company.

The attorney general, as the chief legal officer of the state, contends and therefore represents to this commission that it has authority to enter the requested order on his aforesaid suggestion and motion pursuant to the expressed and implied powers found in §366.05(1), Florida Statutes, and that said contention is fortified by §366.01, Florida Statutes. The attorney general further contends and represents that the provision of funds by said electric utility

for the purpose of an independent audit and analysis of its books, records and rate structure is in the best interest of the public welfare.

§366.04 vests this commission with exclusive jurisdiction to regulate and supervise each electric utility, as defined in chapter 366, with respect to its rates, service and the issuance and sale of certain of its securities.

§366.05 (1) among other things provides that in the exercise of such jurisdiction the commission shall have power to prescribe fair and reasonable rates and charges to be observed by each such utility; to require the filing by each such utility of periodic reports and all other reasonably necessary data; to employ and fix the compensation of such examiners, and technical, legal and clerical employees as it deems necessary to carry out the provisions of said chapter; and to exercise all judicial powers, issue all writs and do all things, necessary or convenient to the full and complete exercise of its jurisdiction and the enforcement of its orders and requirements.

§366.01 declares that the regulation of electric utilities, as defined in chapter 366, is in the public interest, and provides that said chapter shall be deemed to be an exercise of the police power of the state for the protection of the public welfare and all provisions thereof shall be liberally construed for the accomplishment of that purpose.

Previously, by order no. 5098, dated April 9, 1971, we denied a request by this intervenor that the commission itself retain an independent certified public accounting firm for the purpose of auditing the books and records of said electric utility because this commission does not have available funds for that purpose. We also declined to require the parties to this investigation, including this commission, to share in the costs of such an independent audit, because it does not have jurisdiction over such parties as the city of Miami and the federal government for the purpose of such a requirement. In addition the federal government advised the commission that it could not share in the costs of such an investigation.

By said order no. 5098, we tendered to the attorney general the commission's accounting staff, which is composed of two certified public accountants and numerous accountants who are well qualified in public utility accounting, for the purpose of furnishing him with all the information they have been able to ascertain from their normal and routine surveillance of the company's books and records, supplemented by a concentrated examination and inspection of said books and records for a period of more than 30 days since February 15, 1971. Said order also provided that after the attorney general

had availed himself of the benefit of such information through our staff, if he felt a need for additional information from an examination and inspection of the company's books and records he could then make an appropriate request for authority to examine such specific books and records as he deems relevant and necessary for his purpose.

The attorney general has publicly assured this commission that he will not unduly delay further proceedings in this investigation but will assist the commission in reaching a final determination within a reasonable time. He has also suggested that the commission fix ground rules and safeguards to be observed in any examination and inspection of books and records of the company.

On August 15, 1968, this commission acting on its own motion, without complaint from anyone, instituted this investigation of the earnings and rates and charges of Florida Power & Light Company. However, we have been completely thwarted in the exercise of our statutory jurisdiction in the premises primarily as a result of a continuing controversy over the right to inspect and examine the books and records of the electric utility involved in this investigation. We previously authorized a former attorney general, who had intervened in this investigation, to examine certain books and records of Florida Power & Light Company. However, he did not have available sufficient funds to defray the cost of such examination by an independent accounting firm. That continues to be a problem and this commission itself does not have funds available for that purpose. In the meantime the public's interest and the utility's interest in an orderly and proper conclusion of this investigation, and the commission's full and complete exercise of its exclusive jurisdiction in the premises, are being nullified because funds are not readily available with which to finance an independent audit of company books and records which is authorized by commission rule. While we have every confidence in our own staff of experts in the field of public utility rate making, we believe that the public interest will be better served at this time if some way can be found to permit an independent examination and inspection of such books and records of the company as the attorney general may determine to be necessary and relevant after familiarizing himself with the information presently available to him through our staff. In the present posture of this investigation, and the delays already experienced, we believe that such a course of action now is necessary to the full and complete exercise of this commission's statutory jurisdiction in the premises.

In reaching our conclusions in this matter we are mindful of one potential problem which should be guarded against with all reason-

able precautions. Our rule, which is a copy of similar court rules, permits the examination and inspection of relevant books and records of a public utility and has been before the Supreme Court of Florida several times recently. In every instance the court has affirmed this commission's construction of said rule and the conclusion that the rule had not been properly invoked by those seeking to examine Florida Power & Light's books and records. However, in its most recent decision on the matter, City of Miami v. Florida Public Service Commission (1969), 226 So.2d 217, the court cautioned that —

> "To permit examination of all records of income and expenditure would unreasonably interfere with the operation of the power company. Numerous demands for large scale examination of this type would make it difficult to conduct ordinary electric service. The requirements of the rule are intended to protect against unreasonable interference with business operations while at the same time affording parties an opportunity to inspect records on proper showing."

In the same case the chief justice wrote a dissenting opinion in which he pointed out that —

> ". . . it lies within the power and duty of the commission to insure that any inspection be reasonably made under conditions that will not permit a great rush of curiosity seekers to disrupt the utility's orderly business management. For example, the commission itself could make the inspection for a particular rate hearing, with an authorized representative named by intervenors to be present during the inspection, and make available to all interested parties the information obtained in the inspection."

In this proceeding we are dealing with the request of the state's chief legal officer, the attorney general, and we believe that we should adopt a liberal construction of our statutory powers, as specifically authorized and required by the legislature, so that the attorney general may efficiently and effectively perform such duties as may be imposed upon him by the constitution and the statutes of this state with respect to the protection of the public interest and the preservation of the public welfare. Obviously, every customer of a large public utility cannot be granted authority to examine and inspect the utility's books and records. Such action would unreasonably interfere with the efficient operation of the company and the furnishing of necessary service. It would also unreasonably delay the regulatory process to the injury of the overall public interest. Our conclusions and decision in this specific instance,

therefore, should not be construed as a precedent except in those instances where the state's chief legal officer, the attorney general, intervenes on behalf of the general public and represents to the commission that such action is necessary in order that he may properly and efficiently perform his duties in representing the public interest.

Now, therefore, based upon the representations of the attorney general that this commission has the authority to require Florida Power & Light Company to pay directly, as authorized by the attorney general, a sum of money not to exceed $25,000 to an independent certified public accounting firm or recognized public utility rate consulting firm, such firm to be employed and retained by the attorney general on behalf of the consumers of Florida Power & Light Company, for the purpose of conducting an independent audit and investigation of the rate structure of said company, and relying upon the legal opinion of the attorney general, we find that this commission does have such authority and that the affirmative exercise thereof is necessary and convenient to the full and complete exercise of its exclusive jurisdiction in the premises.

We further find that Florida Power & Light Company should be directed to pay to the attorney general's designee, in amounts authorized by the attorney general, a sum not to exceed $25,000 for the purpose of conducting an independent audit and investigation of the rate structure of said utility when and if the attorney general complies with the requirements of our outstanding order no. 5098 with respect to the designation of specific books and records which he deems relevant and necessary for his purposes after having familiarized himself with the information presently available to him through our staff.

Now, therefore, in consideration thereof, it is ordered that the foregoing suggestion and motion of the attorney general be and the same is granted and Florida Power & Light Company is directed to pay directly, as authorized by the attorney general, a sum of money not to exceed $25,000 to an independent certified public accounting firm or recognized public utility rate consulting firm, such firm to be employed and retained by the attorney general on behalf of the consumers of Florida Power & Light Company, for the purpose of conducting an independent audit and investigation of the rate structure of said company; provided the attorney general complies with our outstanding order no. 5098 with respect to the designation of specific books and records which he deems relevant and necessary for his purposes after having familiarized himself with the information presently available to him through our staff.